Good morning. Good morning, Your Honor. Neil Saltman for S.F.P.P.L.P. of Mayor Brown, L.L.P. I'd like to reserve five minutes, if I may. I think we have a very straightforward issue here. The primary issue raised by the judgment below is whether there's federal question jurisdiction. That's easily answered in the affirmative. One of the reasons it's easily answered is because the test is fairly liberal. Jurisdictional dismissals on federal question jurisdiction are exceptional under Ville v. Hood and subsequent cases. They can only be granted if the federal claim is immaterial, wholly insubstantial, or frivolous. That's the test we have to satisfy. We more than satisfied that test. In fact, the district judge who dismissed it on federal jurisdictional grounds in another order, which is part of the request for judicial notice, said that it was not frivolous. Having said that, it seems to me we're over the hump we need it to be. You claim that Union Pacific's a state actor, right? That's one of the claims. It's not the only claim. That's not the only basis for jurisdiction. It's not a basis for jurisdiction? It's not the only basis for jurisdiction. Is it a basis for jurisdiction? It is part of the cause of action for the second and third causes of action, part of the claim for relief in those two causes of action. The first cause of action does not require a showing of a state actor. The first cause of action, there's liability, direct liability, whether or not you're a state actor. And if you look at the first cause of action as we pleaded, it says nothing about either preemption or state action. It says there's a direct violation of the PSA in that cause of action as an owner, an operator, or as someone who is subject to that. And that is different than the regulatory issue that comes up with regard to the second and third causes of action. And the arising under jurisdiction, obviously, is test as long as the suit arises under the law that creates the cause of action. This case arises under the Pipeline Safety Act. That's clearly pleaded there. Wait a minute. The Pipeline Safety Act is going to require the installation of a pipeline meeting certain engineering standards and conditions, right? Not just installation. Wait a minute. Let me finish. And the railroad has granted an easement for the pipeline subject to some contractual terms of limitation and condition, right? Yes. Not that limitation. Can't those limitations and conditions exceed the Pipeline Act? No, they do not. Can they? Can they? Yes. As a matter of contract. As a matter of contract, I believe they cannot, because the regulatory scheme exceeding is a different question than whether they differ from. That is, there's a factual issue. There would be a factual issue. Well, if you're going to bury three feet, and that's what the Act says, and the contract says you're going to bury 12 feet, don't you comply with the Act when you bury 12 feet? Not necessarily. And it's not just the burying issue. There's a lateral distance from the center line of the track. That is what we. If you have a contract with the railroad for an easement, and you're unhappy with the requirements of that easement, you can go locate your right-of-way wherever you want, right? All you have to do is bring an action in condemnation for a new route, right? Yes. And that's really what the railroad's telling you to do. Well, I don't think that's what they're telling you. We have a perpetual easement. We have a property right here, which we have paid for and paid millions of dollars for. I understand. Subject to the terms and conditions of the easement. But the terms and conditions of the easement. Which has a provision concerning relocation of your line, right? But it doesn't have a condition concerning depth or ARIMA obligations, and it hasn't been interpreted for 55 years to be different than that. That is, this easement has been there, this language has been there since 1955. It has never been interpreted to incorporate ARIMA obligations ever before. In fact, it has been interpreted to the opposite. Well, you can raise that defense in the state court action, can't you? Well, the state court action doesn't even raise the question of ARIMA. If you look at the state court complaint. No, I'm saying you could raise it as a defense in the state court action. Well, we have raised it as a defense. Well, then why isn't that, that's the district judge saying that's where you ought to let this play out. Well, because the difference is that the question is whether there is federal jurisdiction here under the Pipeline Safety Act. We're over jurisdiction. I'm talking on the merits. The judge says this is a, you have basically a federal defense to a contract action. Well, we obviously could do that, but that doesn't answer the question of whether there's jurisdiction. I understood your main, everything seems to hinge on your being a state actor. No, I don't think that's correct. You know, I looked again at your blue brief today, and I mean, the whole thing turns on, as I read it, maybe I misread it, but it looks like every one of your claims presupposes that there's a, that the railroad is a state actor. No, I think if you look at also the reply which raised, which was raised an issue in response to something that Union Pacific said on the contract question. The reply said on the contract question, or the opposition said on the contract question, we have no obligations. We can do whatever we want. And what we said in the reply is, no, you cannot. And the reason you cannot is because you are an owner or operator, in fact, an owner, under the Pipeline Safety Act. You're defined under 49 U.S.C. as a 10601A5 and A18 as both an owner and an operator of a pipeline facility. Pipeline facility is defined in those sections as a right-of-way. If you own a right-of-way on which a pipeline is located, you are subject to the requirements of the PSA. Not as a state actor, not as a regulator, but as someone who is directly subject to the PSA itself. There's another theory, and if you think about this, it actually makes some sense. The purpose of the PSA is trying to decide or trying to enforce a standard nationwide regulatory scheme for interstate pipelines. That's the purpose of it. It does not want, as the city of Mounds, U.K., said, to have different schemes every time you go on and off a particular property owner's property, which happens in this particular pipeline hundreds of times. Well, if you condemn Bland and Fee Simple, I take it you could put your pipeline exactly where the federal statute required and you'd be in hog heaven, right? But you're not. You're on railroad right-of-way. Right. And you're endangering cargo and trains regardless of where you put that pipeline. Well, that's not true, and that's not what the complaint says. That is, we're here on a pleading issue, and the question is whether the railroad can make arguments in a brief which are inconsistent with the allegations in the pleading. The pleading says, to the contrary, it says it is unsafe to do what the railroad is trying to direct us to do. The reason it is unsafe, as the pleading also alleges, is that when you bury a pipeline deeper, you have worse problems with regard to curing leaks. You have worse problems with regard to discovering leaks, given the way the technology goes for discovering those leaks. That's why we allege affirmatively that what the railroad is doing is less safe than the Pipeline Safety Act and, therefore, would put us in violation, because one of the principles of the Pipeline Safety Act is to handle the pipeline so that it is safe and can – and problems can be cured, environmental leaks can be handled. We specifically allege in the complaint that that cannot be done under the effort to impose AREMA. What if they told us to put it 30 feet down? The way, in fact, one of the ways you check for leaks is by running a plane over the pipeline, and the plane watches things that go on on the surface, heat changes and all of that, to make sure that there's no leak. If you put that pipeline 6 feet down, 9 feet down, 12 feet down, you interfere with the ability to check it. That's what we specifically allege in the complaint. And what the district court did is say they say theirs is more safe. Well, theirs may or may not be more safe. We allege that it is not. We believe that the evidence, if we were allowed to put on evidence, would show that it was not. What section of the Pipeline Safety Act is violated by their requirement? The regulations, Part 195. And that's alleged specifically in the complaint. I can get you the subsection in particular. I thought I brought it with me. Can you read me just the pertinent few words? I'm sorry, the pertinent few words to? Of that regulation that you say is? It's part 195.248 and .256. And that's alleged in paragraph 20, among others, of the complaint, at ER 27, page 7. 248, 195.248. It says unless it's specifically exempted in the subpart, all pipe must be buried so it is below the level of cultivation, except as provided in paragraph B. It must be installed so that the cover between various things, as determined by recognizing generally accepted practices, complies with the following table. And then there's a detailed table. And then there are exceptions for various locations. There's also true five. Where does it say that nobody can require that pipe be buried 6 feet? Well, it doesn't say that nobody can require that the pipe be buried 6 feet. What it says is that there should be uniform Federal standards and that you must be. You didn't quote me that part. What do you? Well, there are other provisions of the Act which require that there be uniform Federal standards. You ask what was specifically violated. The violation is a violation of the regulations 106.121 says if you violate the Act or the regulations, there's a cause of action in Federal court. Yeah, but I haven't you haven't really directed me to where it says you can't do what they're asking you to do. I don't think it says specifically you can't do it 6 feet versus 12 feet versus 18 feet. But for example. It's 6 feet. Well, it's not always 6 feet as they interpret it. In this case, we're interested in 6 feet. In 256, it says the pipe at each railroad or highway crossing must be installed so as to adequately withstand the dynamic forces exerted by anticipated traffic loads. The AREMA standards do not permit crossings. That is, you cannot cross under the AREMA standards a railroad right-of-way. That means that you cannot have a pipeline under those standards unless they decide they want to give you an exemption that goes under a railroad right-of-way. There are hundreds, thousands of crossings that we have and that other pipelines have. The Federal regulation says you can as long as you engineer it properly. But it doesn't say, as the AREMA standard does, that you must be 25 feet laterally from the center line of the railroad. And you cannot be 25 feet from the center line of the railroad and go under the crossing. It's impossible to do, physically impossible. But I think the relevant point is that all of that is a question of evidence. What we have said is that you are an owner and operator under the first cause of action, and we want an injunction against your efforts to prevent us from complying with what we think we should comply with and from your efforts to make us comply with something else which we have never agreed to comply with. Because the contract itself does not mention AREMA. It never does. Right. But this is not a contract case. This is not a contract case. Our case says we want to enjoin you from asking us to comply with a standard that we haven't agreed to and which is inconsistent with the Federal standard which does, in fact, govern us. Because we operate a pipeline. We're subject to the Pipeline Safety Act. They operate a right of way on which there are pipelines. They are subject to the Pipeline Safety Act. So wholly apart from the state actor issues, we have a direct allegation of a violation. Whether or not six feet is good, three feet is good, something in between is a factual issue. And we're perfectly happy to have the evidence play out on that factual issue. But we have a right to have the evidence play out on that factual issue. Neither you nor I nor the district judge knows exactly whether it is safer to be at a particular location, three feet, four feet, six feet or ten feet. There may be places in which you need to be ten feet in order to be safe enough given the lows. But we don't know that. And that's why there's a lawsuit. The question is, is there Federal jurisdiction for that lawsuit? That's the only issue that's raised by the judgment. All of these other issues are assumptions as to what the evidence would show. We don't know that yet. And we should have a right to discover what that evidence will show. What we do have, I think, is clear that under Bell v. Hood and the other cases, the district court has even said this is a non-frivolous jurisdictional claim. If it is a non-frivolous jurisdictional claim, there are a whole variety of other cases that say if the jurisdictional issue relates to the merits, it is not appropriate for a dismissal on a 12B motion. It should be deferred to a later point. That is all we are asking here. This is longstanding jurisdictional law. There's nothing new about this. If the theory is that not even on a pleading, there's no answer, that they say in a brief, we believe it is safer, our pleading says it is less safe, we believe they say it is safer in a brief, and that trumps our pleading, then we're in a different version of procedural law where we get to make an allegation. We have the obligation to prove that allegation. If we prove it good for us and if we don't prove it, we lose. But they don't get to do it by just saying in a brief, we claim it's safer, and the judge says, well, see, they say it's safer. You're distorting their defense. That's not what they're saying. They're saying if you want to claim that what they're requiring you to do is outside the scope of the easement, you should raise that in the state court proceeding, that what you're asking the court to do is apply, you know, treat them as though this is preempted or not preempted. Well, we're asking the court to treat it as if there's a cause of action for violation of the Pipeline Safety Act that we're permitted to prove. You say they're acting like a state and, therefore, they're preempted. Well, no, we're saying it two differently. They are acting like a state to the extent they impose somebody else's regulatory scheme on us. We have an allegation of that, and the question is whether we can prove that allegation. And we've indicated the facts we think that support that allegation in the context of a railroad scheme. That applies to the second and third cause of action. The first cause of action is not a preemptive issue. It is a direct violation by them as an owner or operator. It does not require that they be a state actor. We are subject to the PSA. We're not claiming that we are a state actor for this purposes. But we don't have the right to violate the PSA. They are just as subject to it as we are. In fact, they are subject to it because we are on their right-of-way, and, therefore, they're obligated as well. I see you're over the time you wanted to reserve. While you're listening to counsel, would you kindly point me to where in the blue brief you raised this issue with respect to Claim No. 1?   Thanks. Good morning. Good morning, Your Honors. May it please the Court, Frank Chaney on behalf of Union Pacific. I believe Judge Sobelman has already gotten to the bottom of this case. This case, although they tried to avoid the easement agreement, is all about what the easement agreement requires SFPP to do. That point was made clear in their original complaint. In an effort to create federal jurisdiction where it doesn't exist, they tried to back away from the agreement in the First Amendment complaint. But because they're essentially seeking declaratory relief, you have to look at what Union Pacific's claims would be against SFPP, not SFPP's defenses to those claims to determine federal jurisdiction. And in this case, it's a contract dispute. The case arises under state law, contract dispute law. It does not arise under federal claims, whether it's the Pipeline Safety Act, the Dormant Commerce Clause, or a takings claim under the Fifth Amendment. Mr. Saltman made the point that they have alleged in the First Amendment complaint, leaving aside the other claims two through, whatever it is, in Claim 1 that you have violated the Pipeline Safety Act. They have not alleged that we violated the Pipeline Safety Act because they haven't alleged any act that Union Pacific has performed that makes their pipeline not comply with the act. They've alleged we've made a demand that they relocate their pipeline pursuant to our contract and that they believe that that movement may not make the pipeline as safe. But that's not Union Pacific having violated the act at this time. And the Pipeline Safety Act doesn't provide for an injunction against possible future violations. It expressly provides that a person may bring a civil action after giving proper notice, which was not done here, for a violation of this chapter or regulation prescribed thereunder. Not for a potential violation, but for a violation. And what is more, as Judge Vesers pointed out, what we're asking them to do does not violate that act. The code provision they rely on for the three-feet cover that they want to abide by, Section B of that code section expressly provides the three-feet cover is minimum cover requirements. Of course they can go deeper. And the Pipeline Safety Act may not require them to be a set distance away from the railroad track, but it doesn't prevent them or say they can't be 25 feet or more away from a railroad track. And just on a side note, Mr. Saltman raised the issue that AREMA does not allow crossing, and that is just an out-and-out false statement. I don't have the section of AREMA, for your honor, because it's not in the record, but I will note that Exhibit 3 to the Pinker Declaration, which is at Tab 30 of the excerpts, on the second page discusses those crossing requirements. It doesn't expressly state crossing. It refers to extending the casings or the appurtenances of the pipeline, and that is the AREMA crossing requirements. It requires a casing on the pipeline be 25 feet on each side of the track. Mr. Saltman is well aware of those facts. So there is no violation alleged here, and therefore there's no basis for jurisdiction under the first cause of action, and that leads us to the state actor requirement under the rest of the causes of action. But they haven't alleged any facts to establish that Union Pacific is or could be a state actor. In fact, their allegations disavow the potential of Union Pacific being a state actor here because the first requirement to be a state actor is that the defendant in the case must take some action against the plaintiff in the case by exercising a right created by state law. They expressly allege we're trying to exercise AREMA, which they expressly contend has no basis in law or regulations, and that allegation is at paragraph 13 of their First Amendment complaint. So because we're not trying to exercise a state right, we cannot be a state actor. Never mind that they can't provide and they haven't alleged facts to support the second part of that test either, which is that we, well, that's the state action requirement that we're a state actor, is they've relied on the public function test. But they haven't alleged anything that meets that standard because it requires that Union Pacific in their dealings with SFPP as alleged in the complaint perform an act traditionally and exclusively reserved to the state. Let me ask something that may not be germane to this at all. Is Union Pacific Railroad the fee simple owner of the right-of-way based on its predecessors and interest? Is this something Congress set out to get the Continental Railroad across? You know, Your Honor, I'm not sure about this particular strip of railroad right-of-way, whether it was from a congressional point of view. Well, we have the critical right-of-way that we're dealing with in this particular case. Is Union Pacific a fee owner? I'm not sure whether or not they are. Is there any state interest in it? Does the state have a reversionary interest? I do not believe so. But I do not know, Your Honor. But for the purpose of the case. You aren't acting on behalf of any state commission in this transaction, are you? Absolutely not. Okay. And I just point, Your Honor, on the question whether there's a reversionary interest or not and whether or not that could possibly create some interest in the government here is the Supreme Court, since at least 1904, has consistently held that even on right-of-ways with reversionary interest to the United States government, as far as the railroad in dealing with the public is concerned, these are private property owned by the railroad as if in fee simple. And I believe this was covered earlier, but I believe, in fact, Mr. Sobel may even admit as much that the Pipeline Safety Act does not preempt private contracts. It sets forth minimum safety standards, and it does not prevent people from parties from agreeing to greater standards. The Williams case, which was quoted by this Court in the Olympic Pipeline case, discusses the notion of a federal standard. The federal standard is great, and we understand the notion that you don't want private landowners demanding different regulations. But when the pipeline agrees to them, the pipeline needs to abide by them when it's a private contract. The Olympic Pipeline case holds as much when it discusses that had the city of Seattle in that case been acting as a municipal proprietor or a market participant rather than a regulator, it could have enforced its additional safety standards. In short, this case is all about the contract and what Union Pacific can or cannot require SFPP to do under the Arima, I'm sorry, under the amended and restated easement agreement between them. And there's no reason why this case is not to be decided by the state courts where it's already pending. Thank you, Your Honors. Thank you. Mr. Zolman. Thank you, Your Honor. The answer to your question is page 36, page 37, the bottom of page 3, and page 6, the last paragraph of our blue brief. In addition, it responds to, specifically responds to an argument raised by Union Pacific at page 47 of its opposition brief where it says the only duty imposed by the PSA on private landowners like Union Pacific is that they utilize a special one-call notification system. This, in our reply brief, responded directly to that allegation that there was only, what they said is we have no obligation under the PSA other than the one-call notification system. And in our reply brief, we said, yes, you do. You have an obligation as an owner or operator citing this page 47 and going on from there. So I think it was absolutely fair response. Page 36 and 37, when I go back and look, will say that we argued that we state a claim just by alleging a violation of the Pipeline Act? I think that is a fair reading of it. It's not as clear as I'd like it to be. I will tell you that. But I think that's certainly what the cause of action itself says. That is, the cause of action itself, if you look at the complaint, when you go to tab 27, the first cause of action, and that obviously is what we should be dealing with. The first cause of action is for injunctive relief under, not declaratory relief, by the way. They keep saying it's declaratory. It's not. It's injunctive relief under 60121A. Right. Right underneath that, paragraph 19, it says we incorporate by reference the previous paragraphs, including paragraph 17, which alleges that this is a public function and that they are, you know, acting under color of state law. That's right. But that's an appropriate alternative fleeting. We could prove public function, and we could not prove public function. We don't have to prove everything that's incorporated within. If you look at the first claim for relief, it doesn't say anything about preemption. If you look, however, at the second claim for relief, it says it's a violation of the PSA and invalid under the Supremacy Clause in paragraph 24 on the next page. There's a clear distinction between what's going on in the second cause of action, which is then incorporated into the third, and in the first cause of action, which does not have the Supremacy Clause allegation. And I think that's an appropriate distinction and appropriate certainly for pleading purposes. There's another issue on jurisdiction, which is the Nicodemus issue, which is whether this is so Federal an issue that wholly apart from that, the Federal courts have jurisdiction. That takes off on the Supreme Court's case in Grable a few years ago in Nicodemus. Union Pacific successfully argued to the Tenth Circuit, and the Tenth Circuit held that a dispute about the railroad right-of-way was a dispute which was so Federal in nature because it was a Federally granted right-of-way, because it was Federally operated and Federally funded originally, that the Federal courts have jurisdiction over what was a dispute as to who got the rents from a fiber optic easement on the right-of-way itself. This case is stronger than that case. We have Federal safety standards, which you don't have there. We have Federally set rates by FERC. We have Federal customers from the pipeline. The military bases in Arizona are served only by our pipeline. It's a Federally chartered railroad. It's set up by acts of Congress. We have a reversionary interest. Judge Beezer asked whether there was a State reversionary interest. There is a Federal reversionary interest under the Rails to Trails Act. Every time they stop using a Federally granted right-of-way, and these are under the acts of the 1860s and 1870s, this strip is among those acts. It's part of the original transcontinental grant. Going back to, I think it's the 1861 act and 1871 act. 1866 and 1871. These, this piece traces back exactly to those acts. The Rails to Trails Act, the Federal Act of Rails to Trails Act says if they stop using this, it becomes Federal land again. They have, in effect, an easement. They're not a private property owner. They are using this because the Federal government has said you can use it to run an interstate railroad, and if you want to build a shopping center there, we're taking it back. You're telling me the land's not subject to State taxation as real property? I don't know whether the land is subject to State taxation or not. What I do know is that the land goes back to the Federal government because they only have an easement. Whether they have, what their tax issue is, I think, is not particularly relevant to this particular question. The question is whether this is Federally granted land subject to a Federal reversionary interest. Is your grant from Union Pacific or from the Federal government? Our grant's from Union Pacific. Okay. And when Union Pacific reverses. So you're subordinate to whatever they have. I'm sorry? You're subordinate to whatever they have. Well, that may be, but that doesn't mean that we're not on Federally granted land. We agree we're on Federally granted land, and we think we have to combine with the Federal Act. They're the ones who are saying they're on Federally granted land running a pipeline on a Federally granted right-of-way, and they don't need to comply. Whether they do comply, whether they don't comply, those are all factual issues. And those are factual issues, but they are not jurisdictional issues under Bell v. Hood. And they are not issues that are in State law. And I would mention that if you look at the complaint, which is filed in the State court, which is part of their request for judicial notice, it does not raise the issue that they raise in their briefs. It doesn't say that a remit is part of the contract. They will not say that. It doesn't mention that. Then they'll lose their case. Well, but that doesn't mean that the Federal court doesn't have jurisdiction to decide otherwise. It means that the issue, according to them, won't be decided in State court, and then we'll be back in Federal court. What I'm suggesting is what the district judge suggested, which is not what they allege. It's what you have the right to raise as an affirmative defense. I don't think that's relevant to the jurisdictional question. I agree with you. It's not. But, I mean, that's probably. And that may be how the merits come out, whether it's in Federal court or State court. But that's a merits issue as opposed to the jurisdictional or 12b-6 issue. Great. Thank you, Mr. Sullivan. Thank you, Your Honor. Mr. Cheney, thank you as well. The case to submit will stand at recess for this session.
judges: Beezer, Nelson, Silverman